# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **CHAPTER 11** |
| **STEWART R. DUDLEY,** | ) | |
| | ) | **CASE NO.: 16-01842-TOM11** |
| Debtor. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER SUSTAINING THE OBJECTIONS OF BUFFALO ROCK COMPANY AND JAMES C. LEE, III TO THE DEBTOR'S CLAIMS OF EXEMPTIONS OVER CERTAIN LIFE INSURANCE POLICIES

This matter came to be heard upon: (i) the Buffalo Rock Company and James C. Lee, III's (collectively referred to herein as "Buffalo Rock") *Objection to the Debtor's Claims of Exemptions Related to Certain Life Insurance Policies* (the "Exemption Objection") [Doc. No. 145]; Buffalo Rock's *Update Regarding Life Insurance Policies* (the "Update") [Doc. No. 993]; Stewart R. Dudley's (the "Debtor") *Response to Claim Objection* (the "Response") [Doc. No. 998]; Buffalo Rock's *Supplemental Objection to the Debtor's Claims of Exemptions Related to Certain Life Insurance Policies based on the Preclusive Effect of the Arbitrator's Prior Final Award and Related Final Judgments* (the "Supplemental Objection") [Doc. No. 1009]; the Debtor's *Supplemental Response to Claim Objection* (the "Supplemental Response") [Doc. No. 1015]; and Buffalo Rock's *Reply Brief in Support of its Objection to the Debtor's Claims of Exemptions Related to Certain Life Insurance Policies Based on the Preclusive Effect of the Arbitrator's Final Award and Related Final Judgments* (the "Supplemental Reply" and together with the Exemption Objection, the Update, the Response, the Supplemental Objection, the

Supplemental Response, and the Supplemental Reply, collectively the "Life Insurance Pleadings") [Doc. No. 1021]. [1]

The Life Insurance Pleadings were set for a final hearing (the "Final Hearing") on February 25, 2019 pursuant to the Court's *Order Rescheduling Hearing* (the "Hearing Order") [Doc. No. 1020]. The Final Hearing was attended by Jeffery J. Hartley, in his capacity as the Court-appointed chapter 11 trustee (the "Trustee"), Derek F. Meek and Marc P. Solomon on behalf of the Buffalo Rock Company, R. Scott Williams on behalf of the Debtor, James W. Gewin for James C. Lee, III, Suzanne A. Fleming for the Buffalo Rock Company, Robert T. Clark for Ahrian Dudley, and Jon A. Dudeck, Jr. for the Office of the United States Bankruptcy Administrator.

Upon consideration of the Exemption Objection, the Update, the Response, the Supplemental Objection, the Supplemental Response, and the Supplemental Reply, the arguments provided at the Final Hearing, the entire record in the above-styled main bankruptcy case (the "Main Case"), including all testimony and evidence offered in the Main Case on any matter or issue; the Court having jurisdiction to consider the Life Insurance Pleadings, together with any relief requested therein; notice of the Life Insurance Pleadings and the Final Hearing having been provided to the Debtor, the Trustee, and all interested parties, and it appearing that no other or further notice need be provided; the Court having determined that the relief detailed in this Order is in the best interests of the Debtor's bankruptcy estate, the Trustee, the Debtor, his creditors, and all parties in interest; upon the Life Insurance Pleadings, together with all of the

---

[1] This Memorandum Opinion and Order constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

other proceedings before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby **ORDERED, ADJUDGED AND DECREED**[2] as follows:

## FINDINGS OF FACT[3]

Based on the record and evidence before it, the Life Insurance Pleadings, the arguments provided at the Final Hearing, and the entire record in the above-styled Main Case, including all testimony and evidence offered in the Main Case on any matter or issue, the Court makes the following findings of fact:

1. On or about May 5, 2016 (the "Petition Date"), the Debtor voluntarily initiated this Case by filing for protection under Chapter 11 of 11 U.S.C. § 101, et seq. (the "Bankruptcy Code").

2. On or about May 19, 2016, the Debtor filed his Schedules of Assets and Liabilities (collectively referred to herein as the "Schedules").

3. The Debtor lists in his Schedule C (pages 15-18) that he has elected to claim certain property as exempt under Alabama law, pursuant to 11 U.S.C. § 522(b)(3).

4. Among the property that the Debtor has listed as exempt are certain insurance policies (referred to collectively herein as the "Policies"), including: (i) American General Life Insurance Company, Insurance Policy No. U10107544L (which the Debtor listed as having a value of $2,572,259.88); (ii) John Hancock Life Insurance, Insurance Policy No. ORD 062156912 (U10107537L (which the Debtor listed as having a value of $1.00); (iii) American General Life Insurance Company, Insurance Policy No. U10107545L (which the Debtor listed as having a value of $5,140,881.41); (iv) American General Life Insurance Company, Insurance

---

[2] At the conclusion of the hearing on these matters, the Court requested counsel for Buffalo Rock submit a proposed Memorandum Opinion and Order. This document is substantially in the form submitted but has been edited by the Court.

[3] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343, 345 n.2 (5th Cir. 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5thCir.1975)

3

Policy No. U10107546L (which the Debtor listed as having a value of $5,140,881.41); (v) American General Life Insurance Company, Insurance Policy No. U10107547L (which the Debtor listed as having a value of $316,423.44); and (vi) John Hancock Life Insurance, Insurance Policy No. ORD 007746031 (which the Debtor listed as having a value of $1.00).

5. In its various pleadings Buffalo Rock notes that Buffalo Rock and the Debtor were involved in prepetition arbitration (the "Arbitration") which dealt with, among other things, the parties' rights and obligations with respect to the American General Life Insurance Policies listed in paragraph 4 above (referred to herein as the "Outstanding Policies"). Following a two week evidentiary hearing, the Arbitrator issued an *Interim Award* (the "Award") on February 25, 2016. Based on Judgments later entered by the State Court, it is clear that the Arbitrator held that an express trust existed over the Outstanding Policies and their cash values in favor of Buffalo Rock pursuant to the Memorandum of Understanding ("MOU") that Dudley entered into nearly two decades prior to the Arbitration.

6. Additionally, in the Judgment entered by the Jefferson County Circuit Court, Judge Vance held there was a resulting express trust over the Outstanding Policies:

> 4. It is hereby ORDERED, ADJUSGED and DECREED that an express trust is declared upon the Policies, and Stewart R. Dudley is permanently enjoined from taking any action with respect to the Polices, including, but not limited to making any policy changes, (except change a beneficiary subject to the Arbitration Award), taking any policy loans, making any withdrawals on the Policies, taking any action to deplete or reduce the cash value of the Policies, pledging, selling, encumbering or assigning the Polices or any proceeds thereof, making any full or partial surrender of the Policies, changing the ownership of the Polices, or taking any action of any kind or nature which would in any way change the character, benefits or terms of the Polices.

Doc. No. 1009 at 24.

7. Buffalo Rock also notes in its pleadings that the Arbitrator also made numerous findings regarding the Debtor's inconsistent treatment of the Policies with regard to tax liability

4

to the IRS and with regard to the Arbitration proceedings. Specifically, Buffalo Rock notes that the Arbitrator found that "Dudley took the position that he did not owe any taxes as a result of the distribution of the 419 Plan policies to him because he had an obligation to repay the premiums, plus $10 million.", and that the Debtor's position with the IRS was "consistent with the Company's reporting" and "consistent with [Dudley's tax counsel's] statement to the IRS that the repayment obligation was a current obligation by Dudley."

8. Following the entry of the Award, the Honorable Judge Robert S. Vance entered two Judgments against the Debtor (collectively, the "<u>Judgments</u>") on April 5, 2016 in the case of *James C. Lee, III et al. v. Stewart R. Dudley et al.* in the Circuit Court of Jefferson County Alabama at CV-2011-900773 and in the case of *Buffalo Rock Company v. Stewart R. Dudley* in the Circuit Court of Jefferson County, Alabama at CV-2011-900461 (collectively the "<u>Judge Vance Cases</u>"). The Judgments, among other things, confirmed the Award in the Judge Vance Cases and, specific to this matter, the Judgments confirmed that the Debtor was liable to Buffalo Rock to repay $29,879,147.11 from the proceeds of the Policies, and that an express trust was declared on the Policies.

9. Following the Debtor's chapter 11 petition, Buffalo Rock filed its *Motion for Relief from the Automatic Stay in Order to Complete Pending Arbitration and State Court Litigation Against Stewart Ray Dudley* (the "<u>Initial Stay Relief Motion</u>") on May 13, 2016 in which Buffalo Rock sought, among other things, an order lifting the stay to allow the Arbitrator to enter a final award on the only two remaining issues in the Arbitration (the amount of attorney's fees and costs due to Buffalo Rock, and an award of damages to James C. Lee, III for the Debtor's failure to provide an accounting). *See* Doc. No. 20.

10. The Initial Stay Relief Motion was granted in part and denied in part on June 21, 2016 pursuant to that certain *Order Granting, in Part, and Denying, in Part, Buffalo Rock Company's and James C. Lee, III's Motion for Relief from the Automatic Stay in Order to Complete Pending Arbitration and State Court Litigation Against Stewart Ray Dudley* (the "Initial Stay Relief Order") in which the Court allowed the Arbitrator to finalize awards on the only remaining issues in the Arbitration and to allow the Arbitration awards to be filed in the state court lawsuits. *See* Doc. No. 90.

11. In compliance with the Initial Stay Relief Order, the Arbitrator entered his *Final Award* (the "Final Award" and together with the Award, the "Arbitration Awards") on or about August 12, 2016. The Final Award reconfirmed the Award and stated that "[a]ll substantive claims and damages were ruled on in the Interim Award, which continues in effect." *See* Final Award, p. 2. The Final Award was filed in the state court lawsuits on or about August 15, 2016 and Anne-Marie Adams, Circuit Clerk entered the Final Award as a judgment of the state court on September 19, 2016.

12. Buffalo Rock filed its Exemption Objection in this case whereby Buffalo Rock, among other things, objected to the Debtor's attempted exemption of the Policies based on the allegations that the Policies were not part of the Debtor's bankruptcy estate under 11 U.S.C. §541(a), and the Policies were placed in an express trust for the benefit of Buffalo Rock. *See* Doc. No. 145.

13. Buffalo Rock filed its *Motion for Relief from the Automatic Stay (I) to Enforce the State Court's Judgment and Permanent Injunctions Regarding an Express Trust Over Certain Life Insurance Policies and (II) to Take Such Other Actions Necessary to Protect and Preserve the Policies* (the "Second Stay Relief Motion") on December 1, 2016. Doc. No. 192.

6

14. In response, the Debtor filed his *Objection to Buffalo Rock's Motion for Relief from the Automatic Stay* (the "Objection to Stay Relief") on December 16, 2016 in which the Debtor alleged that the Arbitration Awards were not final decisions because they were the subject of a Rule 59 motion to reconsider, and because Dudley had entered into a settlement with the Internal Revenue Service (the "IRS"), which included mention of one of the Policies. *See* Doc. No. 200, p. 2-3.

15. In response to the Objection to Stay Relief, Buffalo Rock filed its *Supplement to Buffalo Rock Company's Motion for Relief from the Automatic Stay (I) to Enforce the State Court's Judgment and Permanent Injunctions Regarding an Express Trust Over Certain Life Insurance Policies and (II) to Take Such Other Actions Necessary to Protect and Preserve the Policies* (the "Supplement") on December 29, 2016 in order to clarify the unlapsed insurance policies that Buffalo Rock was seeking to protect in the Second Stay Relief Motion. *See* Doc. No. 206. The unlapsed policies described in greater detail in the Supplement are referred to herein as the "Outstanding Policies."

16. This Court entered its *Order on Buffalo Rock Company's Motion for Relief from the Stay to Enforce State Court Judgment Regarding Certain Life Insurance Policies and to Take Such Other Actions as Necessary to Protect and Preserve the Policies* (the "Second Stay Relief Order") on December 29, 2016 denying, in part, and granting, in part, the Second Stay Relief Motion. Doc. No. 207. Specifically, the Second Stay Relief Order provided injunctive relief in order to protect and preserve the value of the Policies and provided a system for retrieving future information regarding the Policies. *See id.*

17. On or about October 3, 2018, this Court entered an *Order and Notice of Hearing* which, among other things, required the Trustee or his counsel to file a supplement to proceeding

7

Case 16-01842-TOM11    Doc 1032    Filed 03/19/19    Entered 03/19/19 14:45:50    Desc
Main Document    Page 7 of 17

#145 (the Exemption Objection) on or before October 29, 2018. Doc. No. 993. Further, the order required the Debtor to file a response, if any, to either the supplement or the Exemption Objection on or before November 19, 2018. *See id.*

18. In response to the October 3, 2018 order, Buffalo Rock filed an update titled *Update Regarding Life Insurance Policies* regarding its efforts to obtain updated information regarding the Outstanding Polices on October 29, 2018. Doc. No. 993.

19. It appears, based on recent information submitted to the Court, that the Outstanding Policies' aggregate value (either cash surrender or total amount of the death benefit) is, and always will be, significantly less than the reimbursement obligations owed by the Debtor pursuant to the express trust affirmed in the Arbitration.

20. The Debtor filed his Response on November 20, 2018 arguing that the Outstanding Policies were part of the Debtor's compensation while employed with Buffalo Rock, that the United States Tax Court had already adjudicated the Outstanding Policies in favor of Stewart R. Dudley, and that the Outstanding Policies were exempt. Doc. No. 998.

21. An initial hearing was held on or about December 3, 2018 regarding the status of the Outstanding Policies, at the conclusion of which, this Court ordered Buffalo Rock to file a supplement to its Exemption Objection on or before December 17, 2018; ordered the Debtor to file any response on or before January 7, 2019; and ordered that any reply from Buffalo Rock was due on or before January 23, 2019. *See* Court Audio, Doc. No. 1004, beginning at 13:48.

22. On December 17, 2018, Buffalo Rock filed its Supplemental Objection arguing, among other things, that the doctrine of *res judicata* barred the Debtor's claims to the Outstanding Policies, and the Debtor's tax settlement did nothing to overcome that doctrine. *See* Doc. No. 1009.

8

23. On January 7, 2019, the Debtor filed his Supplemental Response arguing that the Outstanding Policies belonged to the Debtor, that the United States Tax Court had previously resolved this disagreement in favor of the Debtor, and that the doctrine of *res judicata* did not apply to this dispute. *See* Doc. No. 1015.

24. On January 23, 2019, Buffalo Rock filed its Supplemental Reply arguing that the United States Tax Court decision was irrelevant to the current dispute because it did not concern any of the Outstanding Policies, and that *res judicata* established that an express trust was created over the Outstanding Policies in favor of Buffalo Rock. *See* Doc. No. 1021.

25. The Final Hearing was held on February 25, 2019.

## JURISDICTION

26. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the District Court's General Order of Reference Dated July 16, 1984, as Amended July 17, 1984.[4] Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157 (b)(2)(A) and (B).[5]

## CONCLUSIONS OF LAW

**I. The Arbitration Awards Have *Res Judicata* Effect Over Issues Surrounding the Outstanding Policies.**

---

[4] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[5] 28 U.S.C. § 157(b)(2)(A) provides as follows:
> (b)(2) Core proceedings include, but are not limited to-
>   (A) matters concerning administration of the estate[.]
>   (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

9

27. Under *res judicata*, also known as claim preclusion, a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action. *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001) (citing *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)). *Res judicata* may be properly applied only if certain prerequisites are met. *Id.* In the Eleventh Circuit, a party seeking to invoke the doctrine must establish its propriety by satisfying four initial elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action. *Id.* (citing *Israel Discount Bank Ltd. v. Entin,* 951 F.2d 311, 314 (11th Cir. 1992); *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1550 (11th Cir. 1990)).

28. The Eleventh Circuit has held that an arbitration decision can have *res judicata* effect as to all matters embraced in the controversy submitted to the arbitrator, just as a judgment by a court can have *res judicata* effect. *Nicor Intern. Corp. v. El Paso Corp.*, 292 F.Supp.2d 1357, 1370–71 (S.D. Fla. 2003) (citing *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir. 1985); and *Dadeland Station Associates, Ltd. v. St. Paul Fire and Marine Ins. Co.*, No. 01–8287, 2003 WL 21981974, at * 12 (S.D. Fla. 2003)). "When an arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity to present evidence, the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings, just as determinations of a court would be treated." *Id.* (quoting *Greenblatt*, 763 F.2d at 1360; Restatement (Second) of Judgments § 84(3) and comment c (1982)).

10

29. Based on the foregoing, and no factual dispute was presented to the Court, there is no question that the Arbitration involved Buffalo Rock and the Debtor, that the Arbitrator reached a final decision on the merits following a two week evidentiary hearing, and that the issue of an express trust covering the Outstanding Policies was decided by the Arbitrator in favor of Buffalo Rock. There also has been no argument or dispute raised by the Debtor that the Arbitration was not a court of competent jurisdiction. Therefore, because arbitrations are given full faith and credit when analyzing their *res judicata* effect, the Arbitration Awards prevent the relitigation of the issues surrounding the Outstanding Policies.

30. Based on the foregoing, all of the elements of *res judicata* have been met, the issue of an express trust covering the Policies in favor of Buffalo Rock has been fully decided by the Arbitrator and the state court lawsuits, and the Debtor is prohibited from claiming them as exempt in his chapter 11 bankruptcy. *See e.g. Owen v. Owen*, 500 U.S. 305, 308, 11 S. Ct. 1833, 1835, 9114 L. Ed. 2d 350 (1991) ("No property can be exempted (and thereby immunized) unless it first falls within the bankruptcy estate. Section 522(b) provides that a debtor may exempt certain property 'from property of the estate;' obviously, then, an interest that is not possessed by the estate cannot be exempted"); *In re Peregrine Financial Group, Inc.*, 487 B.R. 498, 512–13 (Bankr. N.D. Ill. 2013) (§ 541(d) of the Bankruptcy Code excludes from the bankruptcy estate assets that the debtor held on the petition date in trust for another and § 541(d) "describes the classic express trust situation in which a trustee holds bare legal title to property for the benefit of another who holds equitable title to the trust property"); *In re Ward*, 300 B.R. 692, 698 (Bankr. S.D. Ohio 2003) ("[a]n express trust, from its inception, excludes a beneficiary's ownership interest from being a part of the property which constitutes a debtor's estate in a bankruptcy case."); *In re Dameron*, 155 F.3d 718, 722–23 (4th Cir. 1998) (prepetition

11

express trust prevented funds placed in the trust from becoming part of the bankruptcy estate pursuant to § 541(d)); *In re California Trade Technical Schools, Inc*., 923 F.2d 641, 645–46 (9th Cir. 1991) ("[p]roperty that the debtor holds in trust at the time the debtor files its bankruptcy petition is excluded from the bankruptcy estate and thus is not property of the debtor for purposes of section 547.") (citations omitted); *United States v. Whiting Pools, Inc*., 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) ("We note ... that Congress plainly excluded [from the bankruptcy estate] property of others held by the debtor in trust at the time of the filing of the petition."); and *In re Omegas Group, Inc.,* 16 F.3d 1443, 1449 (6th Cir. 1994) ("A debtor that served prior to bankruptcy as trustee of an express trust generally has no right to the assets kept in trust....").

31. Because the Policies are excluded from the Debtor's estate, the automatic stay does not apply to the Policies. *See e.g. Singer Furniture Acquisition Corp. v. SSMC, Inc. N.V.,* 254 B.R. 46, 56 (M.D. Fla. 2000) ("If property is not property of the estate, then the automatic stay does not protect it); *In re Franco*, 574 B.R. 730, 735 (Bankr. D. N.M. 2017) ("The automatic stay applies to estate property, and does not apply to non-estate property"); and *In re Flanagan*, 415 B.R. 29, 50 (D. Conn. 2009) ("In order to receive the protection of the automatic stay provision and seek contempt against its violators, however, the property at issue must be considered part of the estate.").

**II. Available Appeals and Pending Post-Trial Motions Do Not Negate the Preclusive Effect of *Res Judicata.***

32. "The established rule in the federal courts is that a final judgment retains all of its *res judicata* consequences pending decision of the appeal." *Jaffree v. Wallace*, 837 F. 2d 1461, 1467 (11th Cir. 1988) (citing 18 C. Wright, A. Miller, & E. Cooper, FEDERAL PRACTICE AND PROCEDURE sec. 4433, at 308 (1981 & Supp. 1987); *See also Andreu v. HP Inc*., 272 F. Supp. 3d

12

1329, 1333 (S.D. Fla. 2017) (citing *Jaffree*) ("Whether the Eleventh Circuit grants Plaintiff's petition for rehearing or she petitions the Supreme Court for a writ of certiorari is immaterial to determine whether there has been a final judgment on the merits. 'The established rule in the federal courts is that a final judgment retains all of its *res judicata* consequences pending decision of the appeal.'"); *Fid. Standard Life Ins. Co. v. First Nat. Bank & Tr. Co. of Vidalia, Georgia*, 510 F.2d 272, 273 (5th Cir. 1975), cert. denied, 423 U.S. 864, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975) ("A case pending appeal is *res judicata* and entitled to full faith and credit unless and until reversed on appeal."); *Lloyd v. Card*, 283 Fed. Appx. 696, 700–01 (11th Cir. 2008) (Although an appeal from the prior judgment is pending in this Court, "[t]he established rule in the federal courts is that a final judgment retains all of its *res judicata* consequences pending decision of the appeal."); *In re Walker*, 356 B.R. 877, 891 (Bankr. S.D. Fla. 2006) ("Contrary to the unsupported argument repeatedly advanced in the Plaintiffs' Response, '[t]he federal rule is that the pendency of an appeal does not suspend the operation of an otherwise final judgment as *res judicata*.'"); and *Trustmark Ins. Co. v. ESLU, Inc.*, 153 F.Supp.2d 1322, 1329 (M.D. Fla. 2001) ("Contrary to Trustmark's assertion, the final judgment of a court will not cease to function as *res judicata* merely because a party elects to seek appellate review of that judgment.").

33. The result is the same even if the laws of the State of Alabama are applied as long as the review is not *de novo*, which would not be applicable in this case. *Corinth Bank & Trust Co. v. Lawler*, 117 So. 620, 620 (Ala. 1928) (citations omitted) ("The pendency of the appeal, however, under the decisions of this court, did not disturb the finality of the judgment, [because] we cannot presume the decree to be reversed until this is shown by proof, but must consider it as yet in full force."); *Cashion v. Torbert*, 881 So.2d 408, 414–15 (Ala. 2003) (citations omitted)

13

("In this jurisdiction a judgment will operate as *res judicata* or as estoppel notwithstanding an appeal when the appellate court action is based on a review of the record made below."); and *Ex parte Chesnut*, 208 So.3d 624, 635–36 (Ala. 2016) (The pending appeal of the summary judgment in the civil action did not affect the finality of the judgment. A judgment will operate as *res judicata* notwithstanding an appeal when the appellate-court review is based on the record made below).

34. Additionally, there is no difference in the case of a Rule 59 motion, or any other post-trial motion to the preclusive effect granted the Awards. *Freedom Plastics, Inc. v. Sparta Polymers*, LLC, 2013 WL 12290256, at *8 (N.D.Ga., 2013) ("while it appears that the Eleventh Circuit has not directly reached this issue in the context of a Rule 59(e) motion, other federal courts have recognized that a judgment can be final for *res judicata* purposes even though it has a Rule 59(e) (or similar post-judgment) motion pending."); *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 1383 (Fed. Cir. 1999) (concluding that if faced with this issue, the Fourth Circuit would rule that post-trial motions do not destroy the finality of a judgment for *res judicata* purposes); *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 13 comment f (1982)) ("The timely filing of a Rule 59 motion does not, however, 'deprive a judgment of finality for *res judicata* purposes.'"); *Sherman v. Jacobson*, 247 F.Supp. 261, 268 (S.D.N.Y. 1965); *McArdle v. Schneider*, 228 F.Supp. 506 (D. Mass. 1964) (motion to vacate does not deprive judgment of preclusive effect); *Hubbell v. United States*, 171 U.S. 203, 210 (1898) (noting in dicta that "it may well be doubted whether the pendency of a motion for a new trial would interfere in any way with the operation of the judgment as an estoppel."); *In re Holland*, 2014 WL 4495162, at *8 (Bankr. D. Dist. Col. 2014) ("Thus, even though the Superior Court's denial of the Rule 59 motion is void, the judgment is

14

Case 16-01842-TOM11    Doc 1032    Filed 03/19/19    Entered 03/19/19 14:45:50    Desc
Main Document    Page 14 of 17

still final for purposes of *res judicata*"); *see also* 18 James Wm. Moore, MOORE'S FEDERAL PRACTICE § 131.30[2][c] [iv], at 131-100 (3d ed. 1998) ("There seems to be no compelling argument for treating such [post-trial] motions or possible [post-trial] motions any differently than appeals. Finality should attach for claim preclusion purposes at the time of entry of judgment.").

35. Therefore, based on the foregoing case law, the fact that the Debtor has filed a post-judgment motion, has the ability to file a post-judgment motion, has filed a notice of appeal, or still has the ability to file a notice of appeal, has no relevance to the *res judicata* effect of the Arbitration Awards. The Arbitration Awards and the Circuit Court Judgments are final and fully resolve any dispute as to Buffalo Rock's or the Debtor's interest in the Policies. Therefore, the Debtor's attempts to exempt the Outstanding Policies are due to be disallowed based on prior rulings that found the Outstanding Policies are not the Debtor's property and thus also not part of this bankruptcy estate.

### III. The Tax Court Settlements are Irrelevant to this Dispute.

36. There has been no evidence provided to the Court showing that any United States Tax Court has determined or addressed the ownership or legal interests of the Outstanding Policies. Moreover, based on the record before this Court, it does not appear that Buffalo Rock was ever a party to any of the proceedings between the Internal Revenue Service and the Debtor before the United States Tax Court. As such, this Court concludes that the Tax Court documents provided by the Debtor are irrelevant and do not provide any evidentiary value to the issues surrounding the attempted exemption of the Policies.

### HOLDINGS

Based on the foregoing findings of fact and conclusions of law detailed above, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

**ORDERED** that Buffalo Rock's Exemption Objection is hereby **SUSTAINED**; and it is further

**ORDERED** that, prior to the Petition Date, the Outstanding Policies were held in trust for the benefit of Buffalo Rock as determined by the Arbitrator, confirmed by orders entered in the Judge Vance Cases, and as affirmed herein; and it is further

**ORDERED** that, due to the Outstanding Policies being held in trust for the benefit of Buffalo Rock, the Outstanding Policies are excluded from the Debtor's bankruptcy estate; and it is further

**ORDERED** that, because the Outstanding Policies are excluded from the Debtor's bankruptcy estate, the protections of the automatic stay do not apply to the Outstanding Policies; and it is further

**ORDERED** that any claims or attempts by the Debtor, or on the Debtor's behalf, to exempt the Policies from his bankruptcy estate are, therefore, **OVERRULED AND DISALLOWED**; and it is further

**ORDERED** that the Arbitration Awards as well as the Circuit Court Judgments have preclusive effect in these proceedings and, therefore, the Debtor's exemptions related to the Policies and contained in Schedule C of his Bankruptcy Schedules, as amended, modified, or altered from time to time, are hereby disallowed in their entirety; and it is further

**ORDERED** that an express trust, as recognized by the Arbitration Awards, confirmed by the orders entered in the Judge Vance Cases, and further confirmed by this order, exists over the Outstanding Policies in favor of Buffalo Rock; and it is further

16

**ORDERED** that the Second Stay Relief Order's injunctive relief and procedures for obtaining information regarding the Outstanding Policies remains in full force and effect.

Dated this the 19th day of March 2019.

/s/ Tamara O. Mitchell
**HON. TAMARA O. MITCHELL**
**UNITED STATES BANKRUPTCY JUDGE**